## NATIONAL LABOR RELATIONS BOARD v. ELLIS–KLATSCHER & CO.

### No. 10344.

Circuit Court of Appeals, Ninth Circuit. April 25, 1944.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Howard

Lichtenstein, Asst. Gen. Counsel, and Robert Todd McKinlay and Sanford H. Bolz, Attys., National Labor Relations Board, all of Washington, D. C., and William A. Babcock, Regional Atty., of Seattle, Wash., for petitioner.

Willis Sargent, of Los Angeles, Cal., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The National Labor Relations Board, (A) finding respondent, a California corporation, in December 1940 and January 1941 engaged in interstate commerce in its business of wholesaling of variety store merchandise, seeks our decree enforcing its order issued against respondent,

(B) requiring respondent to cease and desist from dominating and interfering with the formation and administration of the Committee Representing the Boys (hereinafter called the Committee), the Boys being employees of the respondent, and contributing support thereto in violation of Section 8(2) of the National Labor Relations Act, 29 U.S.C.A. § 158(2) (hereinafter called the Act), and to withdraw all recognition from and completely disestablish the Committee as collective bargaining representative of its employees, and

(C) commanding respondent to bargain collectively with the General Warehousemen's Local 598 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, A.F.L. (hereinafter called the Union), as the exclusive representative of its employees in an appropriate unit, in violation of Section 8(5) of the Act, and to post the usual appropriate notices.

Respondent opposes such a decree on the ground that the Board had no jurisdiction of the respondent because respondent was not engaged in interstate commerce and hence a cessation or slow-up of respondent's business due to a labor dispute would not affect that commerce as the word "affecting" is used in Section 2 of the Act, 29 U.S.C.A. § 152. Respondent further contends that there is no substantial evidence in the record from which it may be inferred that it had committed any of the violations of the Act alleged in the Board's complaint and upon which the Board's order is based.

(A) There is no merit in respondent's contention that the Board does not have jurisdiction over the matters charged in the complaint. During its fiscal year 1940–1941 respondent purchased $1,000,000 worth of its merchandise, more than 65 percent of which originated outside the State of California. Of total sales receipts amounting to $1,737,000 during the same period, $50,000 represented receipts from the sales of goods shipped to points outside the State of California. A labor dispute causing a stoppage or slowup of work in respondent's business would substantially affect the flow of interstate commerce.[1]

(B) The complaint charges respondent with causing to be organized among its employees the Committee above referred to and at all times thereafter dominating and interfering with the administration of the Committee by soliciting members therefor and contributing financial and other support to it. There is abundant evidence in the record supporting this charge.

On December 19, 1940, Bua, head of the notion department, and LaFrano, head of the hardware and electric department, signed a pledge of support for the program of the Union which on December 16th and 17th had been attempting to negotiate with respondent on behalf of its employees. On the following day, Klatscher, Chairman of the Board of Directors and Vice-President of respondent, called these two department heads into his office and instructed them to advise the employees that "under the circumstances" the usual Christmas party given to the employees by the respondent had been cancelled because of "the differences between the employees and the employers." Obviously, the Board could infer from these facts that respondent's chairman was opposed to the Union.

Several days later, on December 23rd, the Committee organization was started by fourteen employees, among them the department heads Bua and LaFrano, who so had been warned by Klatscher; Chiella, head of the cosmetic department, and an assistant department head, Modersitzki.

[1] N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L. Ed. 893, 108 A.L.R. 1352, and companion cases; N. L. R. B. v. Fainblatt, 306 U. S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226.

At this first organization meeting, so following the withdrawal of the Christmas party, dissatisfaction with the Union was expressed because they "knew that negotiations had been going on and they did not seem to be getting to first base." The department heads advised the employees under them that they could obtain certain benefits from Chairman Klatscher without having a union representing them and arranged for a general meeting of the employees "with Mr. Klatscher."

On December 26th this general meeting was held on company time in the basement, where Chairman Klatscher stated that there would be no discrimination against any employee for having applied for membership in the Union. Significantly, however, in response to a question whether "there could be a little committee" to meet with respondent · "to discuss various problems of the business," Klatscher responded that "[he] favored it." After this promise of no punishment for having joined the Union and Klatscher's favorable response to doing business with "a little committee," department head LaFrano produced a form of resignation from the Union, typed by one of respondent's office girls, which was signed by 27 of the employees who had applied for Union membership.

The following day, December 27th, a self-appointed committee of the members who had met the day before, consisting of department heads, Isaacs, Bua LaFrano and assistant department head Modersitzki, met with Klatscher and after some discussion Klatscher announced a minimum scale salary for the future of $70 per month, an increase of $5 per month. Various other concessions were made and Klatscher advised the committee to present suggestions for other improvements.

Before the end of the conference it was "definitely decided" that "department heads form the committee representing the boys," and that the committee meet at luncheon with Klatscher on the first Tuesday of each month. Klatscher, who had up to this time refused the Christmas party, now agreed to give a New Year's Eve party for the employees at respondent's expense. Monthly meetings of the Committee continued to take place at Klatscher's expense.

There is here abundant evidence to support an inference that the Committee was formed and dominated by the respondent and warranting the Board's order of disestablishment.

■■ (C) Early in December 1940 the Union had progressed in organizing the employees of the respondent to the point where it suggested to the respondent that it had a majority of respondent's employees in an appropriate unit. After discussion, the matter of determining the Union's membership of the employees was left to a cross-check by the Board by agreement between the parties. The agreement was drawn under the supervision of the Board's representative and agreed upon the unit and to abide by the determination by the Board of the Union's members in the unit. This determination showed a membership of 32 in the unit of warehouse employees of 57.

At the time the cross-check agreement was made at the Board's office, Chairman Klatscher was not present. Superintendent Shackelford represented the respondent and asked for further time to enable Mr. Klatscher to be present. The Board representative insisted that the matter should be concluded at once and the agreement was signed by Superintendent Shackelford on behalf of respondent and the proceeding determining the membership followed.

Respondent later claimed the agreement was not binding since forced upon it in the absence of respondent's chairman. However, it appears that the agreement, so signed in the absence of Klatscher, was almost immediately ratified by Klatscher by continued discussions with the representative of the Union concerning a raise in the employees' wages and improved working conditions. Respondent insists on the sincerity of its bargaining with the Union, without any suggestion that the Union did not represent a majority of the employees. Such conduct constitutes ratification.

In these negotiations a draft of a contract was presented by the Union containing its proposals. Klatscher protested that none of the requests of the Union representative could be granted because of the financial condition of the company. No proof is offered that these statements of Mr. Klatscher concerning the financial condition of the company were untrue and, in fact, no financial statements of any kind appear in the record.

However, it is a proper inference that Mr. Klatscher did not bargain in good faith with the Union representative. As seen, after stalling for a period of a week or ten days, up to December 17th, we find him engaged in the attack on the Union and, with-

in ten days thereafter, the creation of the Committee above described—to which was given the credit for the raise in wages and improved working conditions. By the middle of January the Committee was well established and Chairman Klatscher ceased to have any negotiations with the Union.

The above facts constitute substantial evidence supporting the Board's complaint and its order, and its petition for our decree enforcing the order is granted.