**NATIONAL LABOR RELATIONS BOARD v. UNION MFG. CO.**

No. 12718.

United States Court of Appeals Fifth Circuit.

Jan. 26, 1950.

1. Sixth Circuit, sitting by special designation.

Marion A. Prowell, Atty., Nat. Labor Relations Bd., Atlanta, Ga., David P. Findling, Assoc. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Washington, D. C., for petitioner.

Murphey Candler, Jr., Decatur, Ga., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board, filed pursuant to Section 10(e) of the National Labor Relations Act, as amended. 29 U.S.C.A. § 151 et seq. The order in question was issued against the respondent, a manufacturer of yarn and hosiery at its plant in Union Point, Georgia, on February 25, 1948. It required respondent to bargain collectively and in good faith with its employees through their representative union, and to post appropriate notices of its intention to comply with the Act and the order issued by the Board thereunder.

The question here presented is whether the finding of the Board to the effect that respondent has refused to bargain collectively and in good faith with the union, in violation of Section 8(a)(5) and (1) of the Act, is supported by substantial evidence.

The record reveals, and the Board found, that on April 3, 1944, the Textile Workers Union of America, C. I. O., was duly certified as the exclusive bargaining representative of respondent's employees. After certification of this union by the Board the respondent refused for almost a year to furnish the union with information concerning its wage scale for the employees, even though such information was repeatedly requested by the union as essential to an intelligent discussion and understanding of the wage problem at the bargaining conferences between the Union and the company. During this time respondent further refused to meet for bargaining negotiations sufficiently close to the plant to enable local union officials to attend and participate in the discussions. Even when a tentative agreement had been reached between the union officials and the company on certain points, and after numerous conferences, respondent declined to enter into a partial agreement with the union covering recognition, a grievance procedure and arbitration, taking the position that it would not enter into an agreement covering these issues until all matters in dispute had been resolved. While some of the controversial issues were pending before the Regional War Labor Board the respondent, through the issuance of company bulletins and circulars to its employees, sought to undermine confidence in the process of collective bargaining and to destroy the authority of the union by stressing the greater benefits to be had by relying on respondent's generosity, rather than on collective action through the union.

In a bulletin issued to its employees dated January 19, 1945, respondent blamed the union for the failure of the War Labor Board to approve a Christmas bonus for the employees, and thus attempted to discredit the union with its membership. In a circular letter of February 22, 1945,

the company stressed its willingness to grant concessions to its employees provided it could be done "on a voluntary basis", thereby intimating to the employees that they stood to gain by renouncing their union membership and relying upon the company alone. In another letter, respondent again attempted to discourage its employees from membership in and reliance on the union by declaring its intention to share its "prosperity" and to grant wage raises only if it could be done on a "voluntary basis," so that the company would be "going it alone". A further circular letter dated March 29, 1945, contained an offer on the part of the company to prove to a committee of individual employees that all employees had lost much in wages by their "failures to cooperate", thus intimating that their union membership was directly responsible for the company's refusal to grant wage increases and other benefits. Again, in a circular notice dated November 9, 1945, the company announced an increase in wages and a retroactive bonus to its employees, without consulting the union. On February 7, 1946, it announced a further increase in wages, with the claim that it was given "voluntarily". On May 17, 1946, the company instituted a vacation bonus plan more favorable to the employees than it had previously offered to the union. Although the union was attempting to bargain with the company concerning these matters during all this time, respondent bypassed and ignored the union in granting these benefits. Moreover, in spite of the Board's certification of the union as the bargaining representative of the company employees, and notwithstanding an order of the War Labor Board requiring the company to bargain collectively in accordance with this certification, respondent later attempted to negotiate with a committee of mechanics in the plant concerning wages, suggested a profit-sharing arrangement for their approval, and sought to have a grievance committee organized by the individual employees. Although the committee rejected the company proposals, respondent persisted in its efforts to bypass the union by soliciting individual employees to approve its proposed profit-sharing arrangement, and continued these negotiations for some months despite the protests of the union.

We are of opinion there is substantial evidence to support the finding of the Board that respondent has failed to discharge its statutory duty to bargain collectively with the union in good faith. N. L. R. B. v. Athens Mfg. Co., 5 Cir., 161 F.2d 8; Globe Cotton Mills v. N. L. R. B., 5 Cir., 103 F.2d 91, 94; N. L. R. B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 478; N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 118 F.2d 874, 885; Aluminum Ore Co. v. N. L. R. B., 7 Cir., 131 F.2d 485, 487.

It becomes manifest that the bulletins and circulars issued by the respondent to its employees during the stalemate in bargaining negotiations between it and the union constituted more than the mere exercise of free speech by an employer, but were essentially coercive in nature and effect, and tended to intimidate and restrain these employees in the exercise of rights guaranteed to them under Section 8(a)(5) and (1) of the Act. Cf. N. L. R. B. v. George P. Pilling & Son Co., 3 Cir., 119 F.2d 32, 38; N. L. R. B. v. Poultrymen's Service Corp., 3 Cir., 138 F.2d 204, 208; N. L. R. B. v. Biles Coleman Lumber Co., 9 Cir., 98 F.2d 18, 22; N. L. R. B. v. Ellis-Klatscher & Co., 9 Cir., 142 F.2d 356, 358. Furthermore, the grant of wage increases and other benefits without consulting the union during the pendency of bargaining negotiations, in disregard of its acknowledged status as sole bargaining representative of the employees, and the direct bargaining by respondent with individual employees concerning matters properly within the scope of collective bargaining with the union, plainly constitute violations of Section 8(a)(5) of the Act. Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 683–684, 64 S.Ct. 830, 88 L.Ed. 1007; N. L. R. B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474, 478; N. L. R. B. v. Acme Air Appliance Co., Inc., 2 Cir., 117 F.2d 417, 420.

It follows that the order of the Board is valid and proper, and that respondent's

514

motion to dismiss the petition for enforcement should be denied and the Board's order enforced in full, as prayed in the petition.

Order enforced.