**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ROBERTS BROTHERS, Respondent.**

**No. 14115.**

United States Court of Appeals
Ninth Circuit.

June 30, 1955.

George J. Bott, General Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Norton J. Come, Peter Bauer, Attorneys, N.L.R.B., Washington, D. C., for petitioner.

Rosenberg, Swire & Coan; Abe Eugene Rosenberg, Philip A. Levin, Portland, Or., for respondent.

Before STEPHENS, POPE, and FEE, Circuit Judges.

STEPHENS, Circuit Judge.

Respondent Roberts Brothers is an Oregon corporation which owns and operates a chain of department stores in the principal cities of Oregon. On December 3, 1952, Local 201 of the Retail Clerks' International Association AFL advised respondents by letter that they represented a majority of the employees in respondent's Eugene store. Before the start of work on December 6, the employees of the Eugene store were called together and were addressed by the store manager who told them that the company was aware that the union

was attempting to organize the employees, that the individual's choice as to his union affiliation would have no more bearing on his employment than would his church or lodge affiliation,[1] that while the company sincerely felt the employees would be better off in a number of ways if they did not vote for a union, whether or not the union was favored the future employment would depend as in the past upon the individual's loyalty, ability, and past service. At the close of the address slips of paper were passed to the assembled employees, upon which the words "Against" and "For" were typed. The employees were told that the company was making a survey for the information of the company and that their preference was sought through a secret ballot, and they were requested to encircle either the word "Against" or "For". It was announced that the word "For" was encircled on 16 of the ballots and the word "Against" was encircled on 30 of the ballots. Thereafter complaint was made by the union to the National Labor Relations Board that the action of respondent in taking the poll was a violation of section 8(a) (1) of the Labor Management Relations Act of 1947.[2] After submission of the case upon a written stipulation, and upon specific reference thereto, the Board held in accord with its decision in Protein Blenders, Inc., 105 NLRB 890, that the company had "violated Section 8(a) (1) of the Act, thereby interfering with, restraining and coercing its employees in the exercise of their rights guaranteed by Section 7 of the Act [29 U.S.C.A. § 157]."[3]

Thereafter, the Board issued its cease and desist and posting of notice order, Section 10(e) of the Act.[4] The case is before us on the Board's petition for the enforcement of the order.

No question is raised as to the jurisdiction of the Board,[5] nor as to the propriety of the contents of the speech which preceded the poll.[6]

It is stated in the Board's Finding of Fact III that:

"The sole issue in this case, on the facts stipulated by the parties, is whether the Respondent violated Section 8(a) (1) of the Act, by conducting a secret poll to ascertain its employees' desires as to representation by the Union which claims to represent a majority of such employees. * * *."

Later, under the same numbered Finding of Fact (III) but under a sentence reading:

"Conclusions with respect to the employee poll,"

it is stated:

"The Respondent contends that Section 8(a) (1) of the Act, was

1. Indicative of respondent's position is the following statement made by the store manager:

"Just remember, that no one may threaten, coerce, or promise reward, that this firm will treat with any union, if you so desire, without reference to the individual and we will just as diligently protect non-union or union members from discrimination or abuse."

2. Title 29 U.S.C.A. § 158, which provides:

"(a) It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."

3. In the Matter of Roberts Brothers and Retail Clerks International Association,

AFL Local 201 (1953), 106 NLRB No. 74.

4. Title 29 U.S.C.A. § 160, as amended June 23, 1947, 3:17 PM EDT, c. 120, Title I, § 101, 61 Stat. 146, June 25, 1948, c. 648, § 32, 62 Stat. 991, eff. Sept. 1, 1948.

5. Respondent had in the year preceding the issuance of the complaint caused merchandise of value in excess of $25,000 to be shipped in interstate commerce. See our opinion in N.L.R.B. v. Ellis-Klatscher Co., 9 Cir., 1944, 142 F.2d 356, and the authorities contained in note 1 therein.

6. See Section 8(c) of the Act, as amended in 1947; Title 29 U.S.C.A. § 158(c), as amended June 23, 1947, c. 120, Title I, § 101, 61 Stat. 140; Oct. 22, 1951, c. 534, § 1(b), 65 Stat. 601.

not violated, because the poll was conducted in an atmosphere free from other employer unfair labor practices. We find no merit in this contention. For the reasons stated in Protein Blenders, Inc., 105 NLRB No. 137, we find that the Respondent, by conducting a private poll of its employees to determine their union sentiment, *under the circumstances set forth above*, violated Section 8(a) (1) of the Act, thereby interfering with, restraining and coercing its employees in the exercise of their rights, guaranteed by Section 7 of the Act." [Emphasis added.]

Thus, it would seem that the problem presented is not simply whether a poll by employer of the employees' union sentiments is *per se* a violation of the Act, but whether such a poll *in the circumstances of the case* is a violation. And in the consideration of the problem we start with the stipulation that the speech made by the company's manager immediately before the balloting, was within the privilege granted by the Act.

The *per se* idea announced early by the Board's Standard-Coosa-Thatcher Co., 1949, 85 NLRB 1358 case, was later laid at rest by the Board in Blue Flash Express Inc., 1954, 109 NLRB No. 85, by a direct overruling of Thatcher and a direct repudiation of the doctrine that interrogation *per se* is unlawful.

With the *per se* idea out of the way and the stipulation that all that was said in the speech of the manager was within the privilege, there is nothing left which could support the order except the statement in Finding of Fact III, supra, "under the circumstances set forth above".

We are not furnished with any specific "circumstance" or why or how any specific circumstance or combination of circumstances acted to violate the Act. The general counsel argues that the very fact that the privileged speech was made just before the vote was taken could be coercive through a subtle psychological effect on the employees. But such in reality was the basis of the order in the Protein case, which order was denied the court's enforcement in National Labor Relations Board v. Protein Blenders Inc., 8 Cir., 1954, 215 F.2d 749.

The instant case is no stronger, in facts, than is the Protein case. We approve and adhere to the clear reasoning of Circuit Judge Johnsen in the latter case.

Some twenty years ago when the war over the unionization of industry was at the critical stage, employees might well and with good reason have feared to reveal their union sentiment and might well have been swayed one way or another by an employer's statement as to his position on the subject. Now, labor and industry speak with equal dignity and it requires something more than mere suspicion to read coercion into an employer's speech which, upon its face, is in all respects within the proprieties. We think it is no longer proper to assume that the American employee is a craven individual afraid to stand up and express himself freely on the subject of his own welfare.

The petition for enforcement is denied.