**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CRYSTAL LAUNDRY AND DRY CLEANING COMPANY, Respondent.**

**No. 14726.**

United States Court of Appeals Sixth Circuit.

Oct. 2, 1962.

Margaret Farmer, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., and Margaret M. Farmer, Attys., N. L. R. B., Washington, D. C., on the brief, for petitioner.

Dean E. Denlinger, Dayton, Ohio, Dean E. Denlinger, Smith & Schnacke, Dayton, Ohio, on the brief, for respondent.

Before WEICK and O'SULLIVAN, Circuit Judges, and BOYD, District Judge.

WEICK, Circuit Judge.

The Board, disagreeing with the findings and recommendations of the Trial Examiner, found that Crystal violated Section 8(a) (1) of the National Labor Relations Act, as amended, (29 U.S.C.A. § 158(a) (1)) by conducting a series of four secret polls of its employees to determine their attitude with respect to representation by a labor union. The Board held that the taking of the polls, in the circumstances of the case, constituted an attempt to coerce the employees in the exercise of their right to join a labor organization and thereby interfered with rights guaranteed under Section 7 of the Act, 29 U.S.C.A. § 157. The Board issued a cease and desist order which it has petitioned to enforce here.

Sales Drivers, Sales & Service Local 176, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization within the meaning of Section 2(5) of the Act, 29 U.S.C.A. § 152(5), commenced an organizational campaign among Crystal's truck drivers in May 1960 to induce them to join the Union. Upon learning of this drive, Martin Schryver, President of Crystal, discussed the matter at meetings with the employees and also took the secret polls. The form of the ballot read as follows:

"What Do You Think TODAY

"I have signed a union card—I'm in favor of it          [   ]
"I have signed a union card—but wish I hadn't          [   ]
"I haven't signed a card—but I might be interested     [   ]
"I haven't signed a card—and don't want to sign one [   ]"

---

In meeting with the employees, Mr. Schryver expressed his opposition to the Union. He related to the employees his company's past experience with the Union ten years previously which caused considerable trouble including disruption of its business and violence. He read to the employees portions of the Reader's Digest condensation of Robert F. Kennedy's book entitled "The Enemy Within" which related to the International Union with which the local union here involved was affiliated. The Trial Examiner found that Mr. Schryver's remarks were not coercive, although he said the matter was not free from doubt.

The first ballot was taken shortly after Crystal heard rumors about the drive and found union cards "laying around the plant." It was "interested in what the group thought." The ballots cast on this occasion indicated that none of the employees had signed a union card. Since this result did not agree with the rumors heard by Crystal, it took another ballot. The result was the same. The foregoing reasons were given to the employees before the ballots were taken.

After the second ballot, the Union called upon Crystal and claimed to represent a majority of the employees. Crystal took a third ballot because it doubted the Union's claim in view of the previous ballots. This explanation was also given by Mr. Schryver to the employees. He added "of course, there might be a very good answer to [the difference between the claim of the Union and the showing by the balloting], maybe some of the fellows had changed their minds since we had taken the last ballot, let's take another one, let's see what the facts are today."

The third ballot showed no substantial changes in sentiment in favor of the Union. Mr. Schryver called this matter to the attention of the employees and remarked that "somebody is lying. Now you fellows I know, I work with every day, I surely don't think you are lying, on the other hand, these [representatives of the Union] came in with a straight face yesterday and said they had over 50 per cent of our fellows signed up. If the ballot the day before yesterday was, and some of you were mistaken, let's be honest with ourselves, it's a secret ballot." Following these remarks a fourth ballot was taken which again indicated a lack of sentiment for the Union. Later the Board conducted an election which was won by the Union.

The Trial Examiner, who saw the witnesses and heard their testimony, found no coercion of the employees in the taking of the four polls and in the discussions which Mr. Schryver had with them concerning the Union.

The Act does not prohibit the taking of polls by an employer. It does guarantee to the employees the right to join a

labor organization and it is an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7." 29 U.S. C.A. § 158(a) (1).

There was no evidence in this record of any coercion exercised by the employer over its employees or any interference in the exercise of their rights. The ballot was secret and the employees were free to vote as they pleased and did so. The fact that the Union later won the election conducted by the Board does not indicate any coercion or interference by the employer. There were no discharges or other reprisals following the election which the Union won.

 We do not regard the taking of the secret polls in this case as being a per se violation of the Act nor do we believe that the opposition of the employer to the particular Union tainted the polling. Both employer and the Union had the right of free speech and unless they coerced the employees or interfered with their legitimate activities no unfair labor practice was committed. It might not have been necessary for the employer to take as many as four polls if the employees had been as frank in their voting as they were in the election conducted by the Board. Whether or not the taking of polls by an employer constituted coercion is a question of fact to be determined from all of the facts and circumstances in the case. N. L. R. B. v. Roberts Brothers, 225 F.2d 58 (C.A.9); N. L. R. B. v. Protein Blenders, Inc., 215 F.2d 749 (C.A.8); N. L. R. B. v. Kingston, 172 F.2d 771 (C.A.6).

We pointed out in Burke Golf Equipment Corp. v. N. L. R. B., 284 F.2d 943 (C.A.6) that where the Board and the Trial Examiner are not in agreement the evidence must be examined with greater care by the Court.

We are of the opinion from our consideration of the record as a whole that there was no coercion of or interference with the employees in the exercise of their rights and that the Board's order is not supported by substantial evidence.

Crystal further claims that the Board lacked jurisdiction in this case asserting that it was not engaged in interstate commerce.

The complaint alleged and the answer admitted Crystal's gross sales of over $600,000 and "an indirect inflow of supplies in interstate commerce shipped to its Dayton, Ohio plant of a value in excess of $18,000" for the twelve months preceding the filing of the complaint. No other evidence was offered on this issue and the Board found from these admissions alone that Crystal was engaged in interstate commerce.

 We think the Board was justified in taking jurisdiction.

The Petition for Enforcement is denied.