Kenneth B. McLEAN, d/b/a Ken's Building Supplies, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 15385.**

United States Court of Appeals
Sixth Circuit.

June 9, 1964.

Frank H. Stewart, Cincinnati, Ohio, MacDonald & Ortlieb, Rene J. Ortlieb, Flint, Mich., on brief, for petitioner.

Hans Lehmann, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Hans J. Lehmann, Attys., N. L. R. B., Washington, D. C., on brief, for respondent.

Before WEICK, Chief Judge, and MILLER and CECIL, Circuit Judges.

WEICK, Chief Judge.

Petitioner McLean complains of an order of the Board finding that he had violated Section 8(a) (5) and (1) of the National Labor Relations Act, as amended, (29 U.S.C. § 151 et seq.) by refusing to bargain collectively with the union representing his employees.

He contends (1) that the Board had no jurisdiction over him since his sales were confined to the State of Michigan and (2) that he did not refuse to bargain in good faith with the union and did not violate the Act in any respect.

McLean owned and operated a wholesale business supplying building materials to home builders and remodelers in Flint, Michigan and environs where about 99% of his sales were made. His sales totaled about $325,000.00 a year. He made direct purchases, however, from outside the state in the amount of $41,-808.95. In addition he purchased supplies amounting to $81,227 through and from local brokers and distributers, which were manufactured or produced outside the state.

On October 13, 1961, the union was certified by the Board as exclusive bargaining representative for McLean's three employees after an election in

which it won by one vote. Following the election the business agent of the union met twice with the employees to ascertain their wishes concerning wages, hours and working conditions. The business agent then held collective bargaining sessions with McLean on November 21, 1961 and December 12, 1961. At the November meeting the union presented a "model" contract to McLean which contained a provision for health insurance under a plan established by it. McLean agreed to consider the union's demand and admitted that his employees should have some hospitalization insurance.

At the December bargaining session McLean offered to contribute $3.00 per week for each employee toward health insurance under the union's plan. He further agreed to enter into a contract similar to the union's contract with Builders' Wholesale Co. and to pay wages of $1.80 per hour, but no overtime. The business agent agreed to submit McLean's offer to the employees and advise him of their reaction. The business agent neglected to do this and the union did not communicate further with McLean until July, 1962, when it attempted by letters and telephone calls to resume bargaining negotiations with him. McLean refused to attend meetings scheduled by the union or to negotiate further with it, stating that the union's certification had run out and it no longer represented a majority of his employees.

In February, 1962, an employee named Ryan had a telephone conversation with McLean, who was vacationing in Florida. At the suggestion of another employee, Ryan told McLean that if he would give the employees Blue Cross hospitalization insurance and uniforms, they would forget about the union. McLean stated he would attend to the matter upon his return, and on March 12, 1962 he entered into an insurance agreement for Blue Cross hospitalization. The union was not consulted or notified of this event.

The Trial Examiner found upon the evidence that McLean was engaged in commerce within the meaning of Section 2(6) and (7) of the Act and that he had violated the Act in instituting the Blue Cross Plan. The Trial Examiner concluded, however, that the union had engaged in dilatory and negligent conduct in its bargaining relations with McLean, and, therefore, he was under no duty to bargain with it in July, 1962. The Trial Examiner recommended dismissal of the complaint filed by the union with the Board.

The Board agreed with the Trial Examiner on the subject of jurisdiction and with his finding that the Act had been violated by McLean in instituting the Blue Cross Plan, but disagreed with his conclusion that the conduct of the union had relieved McLean of his duty to meet and negotiate with the union in July, 1962. The Board ordered McLean to cease and desist from the unfair labor practice and to bargain with the union. The case is here on McLean's petition to review and the Board's cross-petition for enforcement.

■ Jurisdiction of the Board was not dependent upon the establishment of sales made outside the state. It was sufficient to prove that there was a direct or indirect inflow of goods in substantial amounts from out of the state. N. L. R. B. v. Elias Bros. Big Boy, Inc., 325 F.2d 360 (C.A. 6); International Union, Progressive Mine Workers of America, et al. v. N. L. R. B., 319 F.2d 428, 435 (C.A. 7); N. L. R. B. v. Crystal Laundry & Dry Cleaning Company, 308 F.2d 626 (C.A. 6); cf. N. L. R. B. v. Reliance Fuel Oil Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279.

■ The Trial Examiner found from the evidence that McLean had a direct inflow of goods and materials of $41,808.98 from out of the state and an indirect inflow of $81,227. These findings of fact were approved by the Board. In our judgment, they were supported by substantial evidence and are not clearly erroneous. Adding the direct and indirect inflow, the total out of state purchases amounted to $123,035.98. This was sufficient to satisfy not only the

statutory requirement, but also the self imposed jurisdictional standards of the Board. Siemons Mailing Service, 122 N.L.R.B. 81, 85. Since "jurisdiction exists under the Act, the extent to which that jurisdiction will be exercised is a matter of administrative policy within the discretion of the Board." Lucas County Farm Bureau Co-Op. Ass'n v. N. L. R. B., 289 F.2d 844, 845–846 (C.A. 6).

■ The contention that McLean could have purchased all of his supplies within the state has no merit. The fact is that he did not do so.

■ Although no cases involving Blue Cross insurance were cited, the question whether unilateral acts by an employer relating to wages and fringe benefits constituted an unfair labor practice, has been considered by the courts. Certainly health insurance coverage may be placed in the category of fringe benefits. Section 8(d) of the Act (29 U.S.C. § 158 (d)) provides that "to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment * * *."

The Supreme Court, in N. L. R. B. v. Katz, et al., 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230, was presented with the problem of unilateral changes in sick leave and wages. In upholding a violation found by the Board, the Court said:

"Unilateral action by an employer without prior discussion with the union does amount to a refusal to negotiate about the affected conditions of employment under negotiation, and must of necessity obstruct bargaining, contrary to the congressional policy. It will often disclose an unwillingness to agree with the union. It will rarely be justified by any reason of substance. It follows that the Board may hold such unilateral action to be an unfair labor

practice in violation of § 8(a) (5), without also finding the employer guilty of over-all subjective bad faith." (p. 747 of 369 U.S., p. 1114 of 82 S.Ct.)

See also N. L. R. B. v. Crompton-Highland Mills, Inc., 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320 (1949) (unilateral wage increase which was greater than anything offered during negotiations and without prior notification to the union).

■ In our opinion, Katz compels a finding of an § 8(a) (5) violation here. Blue Cross insurance was an alternative plan, as opposed to the union's health insurance plan, which should have been negotiated with it. This is part of the statutory duty to bargain collectively.

In Crompton-Highland Mills it was recognized that under some circumstances unilateral changes were justified. As stated in N. L. R. B. v. United States Sonics Corp., 312 F.2d 610, 615 (C.A. 1. 1963):

"However, where the parties have engaged in bona fide negotiations but an impasse is reached, the employer may effect unilateral changes or make unilateral offers to the extent of his best offer to the union. * * * So long as no greater inducement is offered to the workers than was offered to the Union and there is notice to and consultation with the Union then unilateral activity is not proscribed."

Petitioner relies on this Court's decision in Fetzer Television, Inc. v. N. L. R. B., 6 Cir., 317 F.2d 420 (1963) where unilateral changes were effected. There, as in Sonics, an impasse in bargaining had been reached. The union was aware of the changes instituted by the employer. Fetzer Television, therefore, would come within the scope of the exception. In the present case there was no impasse. No prior notice of Blue Cross coverage was given to the union.

Petitioner's claim that the union's certification period had run out was incorrect. The certification period had about three months to run.

The Trial Examiner concluded that the union was "lax and negligent" in not pursuing the negotiations (49a–50a) from December 12, 1961 to July 19, 1962, and therefore should not profit from its own wrongdoings. This could apply with equal force to petitioner, as he made no effort to contact the union at any time.

Although the union's conduct in neglecting to negotiate during an eight month period, was certainly not exemplary, it seems to us that it constituted more of a violation of duty owing to its members than to McLean. The Trial Examiner, in effect, applied a waiver or estoppel theory against the union. The Board, however, reached the following conclusion (7a):

"Assuming, that, as the Trial Examiner has found, the Union was 'lax and negligent' in this respect, and that the Union's conduct during this period was 'adverse to the interest' of the employees concerned, such conduct is no defense to the Respondent's [McLean's] refusal to meet aind negotiate with the Union on and after July 3, 1962, when the certification had 3 more months to run."

█ The Board's disagreement with the Trial Examiner related to a question of law rather than one of fact and the issue was within its competence to decide. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Webb Fuel Co. v. N. L. R. B., 308 F.2d 936 (C.A. 6).

█ In our judgment, the doctrine of waiver or estoppel did not operate to excuse the employer from its statutory duty to bargain in good faith with the union during the certification period. N. L. R. B. v. Remington Rand, Inc., 94 F.2d 862 (C.A. 2); N. L. R. B. v. Southeastern Rubber Mfg. Co., 213 F.2d 11, 15 (C.A. 5).

The union was given statutory protection to bargain on behalf of the employees for one year after certification. Section 9(a), 9(c) (3) (29 U.S.C.A. 159(a); 159 (a); 159(c) (3)).

This Court, in Motor Valve & Mfg. Co. v. N. L. R. B., 149 F.2d 247, 249 (C.A. 6, 1945), stated:

"The Board found in effect that three and a half months was not too long for that purpose [i. e., collecting and digesting information for negotiation purposes] and we can not say that this finding was arbitrary or capricious. We think that the holding could have been reasonably arrived at."

The Board relies on its decision in Shannon & Simpson Casket Co., 99 NLRB 430 (1952), enforced 208 F.2d 545 (C.A. 9, 1953). In its opinion, the Board ruled at 433:

"Nor was the short lapse of time [6 months] from the last conference between Shannon and Smulyan sufficient to justify the respondent's failure to confer and negotiate with the union. * * *"

See also U.S. Gypsum Co., 94 NLRB 112 (1951) (lapse of 3 months, unilateral wage increase instituted); enforced in part, 206 F.2d 410 (C.A. 5, 1953).

The fact that the employees were dissatisfied with the union and there was a question whether the union still had a majority of them on its side, did not justify McLean's refusal to bargain. If the employees were not satisfied with the union, they could have submitted their grievances to the Board. After the twelve month certification period the employees could have filed a petition for election if the dissatisfaction continued. Sections 9(e) (1) and (2), 29 U.S.C. § 159(e) (1) and (2). The employer also could petition the Board for relief. Section 9(b), 29 U.S.C. § 159(b).

Petitioner relies on N. L. R. B. v. Vulcan Forging Co., 188 F.2d 927 (C.A. 6, 1951); Mid-Continent Petroleum Corp. v. N. L. R. B., 204 F.2d 613 (C.A. 6, 1953); and N. L. R. B. v. Globe Automatic Sprinkler Co., 3 Cir., 199 F.2d 64, but these cases were decided before the decision of the Supreme Court in Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176,

99 L.Ed. 125 (1954), which we think is controlling. In Brooks the Court said:

"Petitioner contends that whenever an employer is presented with evidence that his employees have deserted their certified union, he may forthwith refuse to bargain. In effect, he seeks to vindicate the rights of his employees to select their bargaining representative. If the employees are dissatisfied with their chosen union, they may submit their own grievance to the Board. If an employer has doubts about his duty to continue bargaining, it is his responsibility to petition the Board for relief, while continuing to bargain in good faith at least until the Board has given some indication that his claim has merit. Although the Board may, if the facts warrant, revoke a certification or agree not to pursue a charge of an unfair labor practice, these are matters for the Board; they do not justify employer self-help or judicial intervention."

It was also suggested, during oral argument, that since several years have elapsed since the alleged unfair labor practices and that the union is non grata, the Board's order should not now be enforced. This contention was considered by the Supreme Court and summarily dismissed. N. L. R. B. v. Katz, 369 U.S. at 748, 82 S.Ct. at 1114 (footnote 16);[1] International Union, Progressive Mine Workers of America v. N. L. R. B., 375 U.S. 396, 84 S.Ct. 453, 11 L.Ed.2d 412 (1964), reversing 319 F.2d 428 (C.A. 7, 1963) (2 year interval from offense to the Court of Appeals' decision).

We do not understand that the Board's order operates to compel McLean to change the Blue Cross hospitalization plan in favor of the union plan, but merely to bargain. General Counsel for the Board has confirmed the correctness of this understanding in his Reply Memorandum.

The petition for review is denied and the cross-petition for enforcement is granted.

1. The Court commented: "The company urges that, because of the lapse of time between the occurrence of the unfair labor practices and the Board's final decision and order, and because the union was repudiated by the employees subsequently to the events recounted in this opinion, enforcement should be either denied altogether or conditioned on the holding of a new election to determine whether the union is still the employees' choice as a bargaining representative. The argument has no merit."