**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LYNAIR, INC., Respondent.**

**No. 15957.**

United States Court of Appeals
Sixth Circuit.

June 14, 1967.

Paul Elkind, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Thomas Canafax, Atty., N. L. R. B., Washington, D. C., on memorandum in support of proposed adjudication of contempt), for petitioner.

Allison K. Thomas, Lansing, Mich., (Hubbard, Fox, Thomas & Born, Lansing, Mich., on memorandum in reply to memorandum of N. L. R. B. re proposed adjudication of contempt), for respondent.

Before PHILLIPS and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

The National Labor Relations Board filed a petition praying that Lynair, Inc., respondent, be adjudged to be in civil contempt of this court because of its failure to comply with a consent decree of enforcement entered by this court on June 2, 1964, in which enforcement was granted of the order of the Board issued May 14, 1964.

The Board averred that respondent has failed to comply with that part of the decree which directs that respondent shall:

"1. Cease and desist from:

"(a) Refusing to bargain collectively with International Union, Allied Industrial Workers of America, AFL-CIO through its duly designated representatives, as the exclusive representative of all * * * [employees in the appropriate unit].

"(d) During negotiations with International Union, Allied Industrial Workers of America, AFL-CIO refusing to discuss or negotiate relative to terms or conditions of employment until the above-named Union abandons its bargaining demands.

"2. Take the following affirmative action, which the Board finds will effectuate the policies of the National Labor Relations Act, as amended:

"(a) Upon request bargain collectively with International Union, Allied Industrial Workers of America, AFL-CIO, as the exclusive representative of all its * * * [employees in the appropriate unit] with respect to rates of pay, wages, hours of employment, and other conditions of employment, and if an agreement is reached, embody such understanding in a signed contract."

In its answer respondent denied that it had disobeyed the decree of this court. As an affirmative defense to the petition respondent averred that it resumed bargaining in good faith with the union on April 29, 1964, and that seven bargaining conferences were held with representatives of the union between that date and July 27, 1964; that an impasse was reached on July 27, 1964; and that further bargaining would be fruitless.

The Board contended that on August 1, following the filing by the union of an unfair labor practice charge, respondent cancelled a bargaining conference scheduled for August 5, 1964, and from that time forward has refused to bargain in accordance with the decree of this court. The Board disputed respondent's contention that an impasse was reached on July 27, 1964.

This court first heard oral arguments on the petition and answer on October 13, 1965. Under date of October 22, 1965, an order of reference was entered appointing the Honorable Raymond W. Starr, Senior United States District Judge for the Western District of Michigan, as Special Master to hear evidence and report on the issues of fact presented by the petition and answer.

Because of the illness of Senior District Judge Starr, an order was issued under date of July 25, 1966, appointing the Honorable Frank L. Kloeb, Senior United States District Judge for the Northern District of Ohio, as Special Master.

Under date of January 23, 1967, Judge Kloeb filed a comprehensive report as Special Master, stating that hearings had been held before him on September 26 and September 27, 1966, followed by oral argument of counsel.

Pertinent parts of the report of the Special Master are attached as an appendix to this opinion.

Accompanying the report of the Special Master were detailed findings of fact and the following recommended conclusion of law:

"By failing and refusing to bargain in good faith with the International Union, Allied Industrial Workers of America, AFL-CIO as the exclusive bargaining representative of the Company's production and maintenance employees with respect to wages, hours and working conditions, respondent Lynair, Inc. has violated and continues to violate paragraphs 1(a) and (d) and 2(a) of the Order of the National Labor Relations Board, enforced by and incorporated in the decree of the United States Court of Appeals for the Sixth Circuit, entered June 2, 1964."

Lynair filed objections to the report of the Special Master and a brief in support of its objections. The Board filed a memorandum brief in support of the report of the Special Master. Oral arguments again were heard before the court on April 11, 1967.

■ From a review of the entire record, including the objections and exceptions to the report of the Special Master and the briefs filed in support of and in opposition to said report, we have concluded that the findings of fact of the Special Master and his recommended conclusions of law are correct. Said report and recommendations are approved, adopted and confirmed by the court. The court finds that the allegations of the petition of the Board averring that Lynair has been guilty of civil contempt have been sustained by clear and convincing evidence, and that at the time and in the manner set forth in the Master's report, Lynair has been and is guilty of civil contempt of this court in that this company has failed and refused to obey the order of this court enforcing the order of the Board.

■ It is well settled that a certification by the Board of a Union as bargaining agent for employees must be honored for a reasonable period, ordinarily one year, in the absence of unusual circumstances. This rule applies even though the Union may have lost its majority status prior to the expiration of the one year period. 29 U.S.C. § 159(c) (3); Brooks v. N.L.R.B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, 42 A.L.R.2d 1405; McLean v. N.L.R.B., 333 F.2d 84, 88 (C.A.6).

In the present case the Union was certified by the Board as bargaining agent on October 18, 1963, and, in the absence of unusual circumstances (which we do not find to be present here), is entitled to be recognized as bargaining representative of Lynair's employees for a minimum period of one year. The Special Master found that the parties conducted bargaining negotiations from October 30, 1963, promptly following certification, until December 18, 1963, and again from April 29, 1964, to July 27, 1964.

■ One of the objections filed by Lynair is that the consent decree of enforcement originally entered by this court was void for uncertainty in that the decree failed to spell out the length of time that Lynair was required to bargain. It is well settled that a bargaining order enforced by the court requires an employer to bargain for a reasonable period of time with the Union, whether or not the Union maintains its majority support. N.L.R.B. v. Warren Co., Inc., 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96; Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020. Ordinarily a reasonable period of time will be until the parties either are able to reach an agreement or until they arrive at a genuine impasse in negotiations. N.L.R.B. v. Satilla Rural Electric Membership Corp., 322 F.2d 251 (C.A.5).

■ We therefore overrule Lynair's objection that the decree is void for uncertainty. It is not necessary that a decree of enforcement specify the period of time that the employer is required to bargain. The employer is required to bargain in good faith for a reasonable period of time, ordinarily until an agreement is reached or until a genuine impasse occurs in the negotiations.

■ The final question to be discussed is the amount of costs to be assessed against Lynair. It is well settled that costs may be awarded as a compensatory fine, that is, as a part of the remedy to which the complainant is entitled in successfully prosecuting a civil contempt proceeding. United States v. United Mine Workers, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884; Gompers v. Buck Stove & Range Co., 221 U.S. 418, 447; N.L.R.B. v. Local 5881, United Mine Workers, 323 F.2d 853 (C.A.6).

■ In the present case the Board has asked that Lynair be assessed with costs of $2,792.76, consisting of (1) $897.56 in actual costs incurred for court reporter and for travel expenses and per diem of board personnel; plus (2) $1895.20 in pro rata costs of the compensation of Board counsel and personnel during the time actually devoted to the case. In the discretion of the court, such pro rata costs and counsel fees may be assessed against a respondent adjudged to be in civil contempt. N.L.R.B. v. Local 254, Building Service Employees International Union, 376 F.2d 131 (C.A.1); Lance v. Plummer, 353 F.2d 585, 582 (C.A.5), cert. denied, 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532, rehearing denied, 384 U.S. 994, 86 S.Ct. 1885, 16 L.Ed.2d 1011; Federal Facilities Realty Trust v. Kulp, 227 F.2d 657 (C.A.7). Such fees apparently were assessed by this court in its unreported order issued January 3, 1964, in N.L.R.B. v. United Mine Workers (No. 14,637).

■ Although recognizing that such costs and attorneys fees may be assessed in appropriate cases, this court in the exercise of its discretion in the present case has decided to assess costs against Lynair only for out-of-pocket expenses incurred by the Board, totaling $897.56, and not to assess Lynair with counsel fees or a pro rata part of the compensation of Board personnel.

The following order will be entered:

The National Labor Relations Board having filed a petition to adjudge Lynair, Inc., to be in civil contempt of this court in that it has failed and refused to comply with the decree of June 21, 1964; and respondent having filed its answer denying that it has disobeyed the decree; and Senior United States District Judge Frank L. Kloeb having as Special Master rendered a report recommending that respondent Lynair, Inc. be adjudged in civil contempt of the decree and that it be required to purge itself as requested in the Board's petition;

And the matter having come on to be heard on April 11, 1967, it is, upon all the proceedings heretofore had herein, ORDERED that the report of the Special Master, dated January 20, 1967, and filed January 23, 1967, be and the same hereby is approved and confirmed in all respects.

It is further ORDERED and ADJUDGED that Lynair, Inc. is in civil contempt of this court and, that said Lynair, Inc., its officers and agents shall purge it of said contempt by:

(A) Fully complying with and obeying the decree of June 2, 1964, by, upon request, bargaining collectively in good faith with International Union, Allied Industrial Workers of America, AFL–CIO as the exclusive representative of the company's employees in the unit described in the Board's Certification of October 18, 1963, until full agreement or a bona fide impasse is reached, and if any understanding is reached, embodying such understanding in a signed agreement.

(B) Immediately posting in conspicuous places, including all places where notices to employees are

customarily posted, for a period of sixty (60) consecutive days, an appropriate notice signed by the Company, by an officer thereof, which states that the Company has been adjudicated in civil contempt for disobedience of the court's decree as set forth in this order, copy of this order to be posted with said notice, and that the Company will take the action in purgation ordered by the court, and by maintaining such notices and a copy of this order in clearly legible condition throughout such posting period, taking reasonable precautions that they are not altered, defaced or covered by any other matter.

(C) Filing a sworn statement with the Director of the Seventh Region of the Board notifying said Director in writing within ten (10) days after the entry of this order showing what steps have been taken by the Company to comply with the court's directions, and by making further sworn returns to the Director of the Seventh Region of the Board within thirty (30) days from the date hereof and every thirty (30) days thereafter, as to the course and nature of bargaining showing that respondent has brought itself and maintains itself in compliance with the decree and with this order.

(D) Paying to the Board its costs involved in these contempt proceedings which are hereby fixed and approved in the amount of $897.56.

In order to insure compliance with the foregoing provisions it is further ORDERED that upon the failure of the respondent, its officers and agents to purge itself of contempt as herein provided, this court hereby imposes a compliance fine of $5,000.00 on the respondent and a further compliance fine of $500.00 per day so long as such noncompliance continues, and will deal further with the matter by such other means as the court shall then determine, including the issuance of body attachment upon any officer or agent responsible for such noncompliance.

## APPENDIX A

This is a suit in civil contempt pursued in accordance with a complaint filed by the petitioning board on April 14, 1965, alleging that the respondent refused to bargain in good faith.

A calendar of events occurring from the very beginning of contact between the Union and respondent might be helpful at this point. It is as follows:

1. October 18, 1963 The Union was certified by the Board as the exclusive collective bargaining representative for the Company's employees.

2. December 1963 Negotiations between the Union and the Company were suspended.

3. February 28, 1964 The Board's complaint issued alleging that the Company had refused to bargain in good faith with the Union.

4. June 2, 1964 Pursuant to stipulation dated April 23, 1964, the court issued a decree ordering the Company to bargain in good faith.

5. August 1, 1964 The Company broke off negotiations with the Union.

6. April 14, 1965 Petition for Adjudication in Civil Contempt and for Other Civil Relief was filed by the Board alleging that the Company refused to bargain in good faith.

7. March 21, 1965 Answer was filed by the Company admitting refusing to meet with the Union but alleging the existence of an impasse and other affirmative defenses.

8. June 21, 1965 The Board filed (1) a reply to the Company's answer denying that an impasse had arisen and (2) a motion for summary adjudication.

9. July 16, 1965 Motion of the Board for summary adjudication denied.

10. October 1, 1965 Notice filed by the Board of its motion to strike three affirmative defenses pleaded in the Company's answer.

11. October 22, 1965 Orders entered by the court striking certain affirmative defenses from the answer and referring the issue of fact to a special master.

12. January 10, 1966 Date on which the hearing herein—later postponed—was originally scheduled by Judge Starr.

13. July 25, 1966 Order entered appointing substitute special master.

It appears that the original negotiations had between the Union and the respondent Company, following certification of the Union by the Board on October 18, 1963, occurred on the following dates:

1. October 30, 1963
2. November 4, 1963
3. November 9, 1963
4. November 14, 1963
5. November 21, 1963
6. December 12, 1963
7. December 18, 1963.

In December 1963, negotiations between the Union and the Company were suspended following a strike that apparently disrupted the negotiations. Thereupon, the Board issued its complaint alleging that the Company had refused to bargain in good faith with the Union. Thereafter, and on June 2, 1964, the court issued a decree pursuant to a stipulation entered into between the parties, ordering the Company to bargain in good faith.

Thereafter, and following an April 29, 1964, meeting between the parties, the parties held negotiation sessions as follows:

1. April 29, 1964
2. May 5, 1964
3. May 7, 1964
4. May 22, 1964
5. June 17, 1964
6. July 17, 1964
7. July 27, 1964.

It appears that immediately following the July 27, 1964, negotiating session the Union filed charges against the Company with the Board, and thereafter the Company broke off negotiations with the Union by refusing to meet on the next date agreed upon, to wit, August 5, 1964 and thereafter, even though the Union, through its representative Mr. Stitt, made two, and possibly three, efforts to resume negotiations by contacting counsel for respondent Company. The reason given for refusing to continue negotiations was the filing of the charges. These efforts by Mr. Stitt were made between August 5, 1964, and early October, prior to the expiration of the certification year, to wit, October 20, 1964.

It appears, therefore, that, after the Union was certified on October 18, 1963, bargaining lasted for two months before it was interrupted by the events which led to the court's decree. Thereafter, on April 29, 1964, the parties resumed bargaining and it appears from the record made genuine progress toward an agreement up to and through the last bargaining session held on July 27, 1964. Up to that time, the parties had reached agreement on most of the provisions of the contract. This is evidenced by Plaintiff's Exhibit 2, which is a compilation of the respondent Company on items agreed on up to May 7, 1964. During the three sessions following the May 5, 1964 session, the parties reached agreement on a number of other items. At the July 27, 1964 meeting, Mr. William Lattimore of the Federal Mediation and Conciliation Service, who had attended the May 22 meeting, and who had been exploring in private with each of the parties the possibility of resolving the wages and union security issues which appeared to be the chief stumbling blocks encountered in efforts to reach an agreement, was of the opinion that the parties were close to an agreement and he estimated that, within six or seven more hours of bargaining, and perhaps at the next meeting, an agreement could be reached. Initially, and following the July 27 meeting, the Company gave as the sole reason for refusing to continue bargaining the filing of the unfair labor practice by the Union. It was not until two and one-half months

later, and about the time of the expiration of the certification year in October of 1964, that the officers of the Company gave as one of their reasons for breaking off negotiations that an impasse had been reached. It is our belief, having in mind that the burden of proof is upon the petitioner herein (N.L.R.B. v. Dell, 309 F.2d 867, 869 (CCA 5) (1962)), and, having in mind that this burden must be sustained by clear and convincing evidence (N.L.R.B. v. Tupelo Garment Co., 122 F.2d 603 (5th Cir.)), and (N.L.R.B. v. Local 5881, U.M.W., 323 F.2d 853, 854 (CA 6)), that there had not been a fair chance for bargaining to succeed and ripen into a full agreement when the Company broke off negotiations immediately after July 27, 1964. At that point, the negotiators had not fully and fairly discussed all aspects of the proposed contract. With the positions of the parties on the union shop and on another important question, to wit, wages, moving closer together the possibility of a contract was emerging.

We have in mind the fact that the respondent is a small company and a comparatively new one; that this was the first attempt to unionize the shop; that the vote in behalf of the Union, and that resulted in a certification by the Board as the exclusive bargaining agent, was 12 to 8, and that up to the present time the total number of employees of the Company does not exceed 30. We also have in mind that, during the later negotiations of the parties, beginning in April of 1964, and ending July 27, 1964, the Union had apparently lost its majority. Undoubtedly, these were considered features, along with the filing of charges, that led the Company officials to take the action that they did in connection with the August 5 meeting and thereafter. This is evidenced by the fact that, at the July 27 meeting, the President of the Company, Mr. Howard Britton, announced that he would be obliged to leave to meet another engagement at 11:00 A.M. The meeting convened at 9:30 A.M.

We, therefore, reach the conclusion that an impasse had not been reached on July 27, 1964, and that the respondent has not bargained in good faith in accordance with the decree of the court. We recommend that the court adjudge respondent in civil contempt and order respondent to return to the bargaining table and otherwise purge itself as requested in the petition. In our study of the case, and in addition to the citations already referred to, we have given especial study to the following cases: Brooks v. N.L.R.B., 348 U.S. 96, 75 S. Ct. 176, 99 L.Ed. 125, 42 A.L.R.2d 1405 (Decided Dec. 6, 1954); N.L.R.B. v. Andrew Jergens Co., 175 F.2d 130 (9th Cir.) (Decided May 17, 1949), Cert. Den. 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503; N.L.R.B. v. Yutana Barge Lines, Inc., 315 F.2d 524 (9th Cir.) (Decided March 25, 1963); McLean v. N.L.R.B., 333 F.2d 84 (6th Cir.) (Decided June 9, 1964).