**AIRPORT SHUTTLE–CINCINNATI, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 81–1768.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 23, 1983.

Decided March 25, 1983.

James M.L. Ferber (argued), Schottenstein, Zox & Dunn, Columbus, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., John Phillips (argued), Emil C. Farkas, Regional Director, N.L.R.B., Region 9, Cincinnati, Ohio, for respondent.

Before KENNEDY and MARTIN, Circuit Judges, and HARVEY,* District Judge.

## ORDER

Petitioner Airport Shuttle seeks review and respondent National Labor Relations Board seeks enforcement of a bargaining order[1] issued upon findings that petitioner had violated sections 8(a)(1) and (5) of the

National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with the Union[2] during its certification period. Because the Board did not clearly err in concluding that certain employees were ineligible to vote and that the petitioner had wrongfully refused to bargain with the Union, we grant enforcement.

Petitioner is a Delaware corporation which provides ground transportation services from its facility at the Greater Cincinnati Airport. Prior to December 1, 1979, petitioner operated a limousine service between the airport and downtown Cincinnati, as well as a shuttle bus service between the airport terminal and the long-term parking lot. In early November, 1979, petitioner was awarded a contract, previously held by another company, Systems Parking, to operate the shuttle bus service between the airport terminal and the short-term parking lot. Laura Reichert, Carolyn McNew and Debra Strunk, drivers for Systems Parking, applied for employment with petitioner upon learning that Systems Parking had lost the contract for the shuttle service route which they had been driving. On November 21 and 23 one of petitioner's managers interviewed Reichert, McNew, and Strunk and accompanied each of them for several hours as she drove her route. At that time each driver was hired by the manager and informed that she would continue to do the same work for petitioner when it took over the contract. Petitioner took over the contract on December 1, 1979. However, in the payroll period ending November 24, 1979, petitioner made payments to Reichert, McNew, and Strunk for the time each had spent driving with the manager.

The Union filed a petition with the Cincinnati Regional Office of the NLRB on October 30, 1979, seeking a representation election among Airport Shuttle employees including drivers. On December 6, 1979,

---

* The Honorable James Harvey, United States District Court, Eastern District of Michigan, Northern Division, sitting by designation.

1. Reported at 257 N.L.R.B. No. 31 (1981).

2. Soft Drink Drivers & Helpers, Vending Drivers & Allied Workers & Employees' Local 152 affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

the Regional Director approved a Stipulation for Certification Upon Consent Election.[3] The election was held on December 20, 1979, and the Union prevailed by an 18 to 17 vote with 4 challenged ballots including those of Reichert, McNew, and Strunk.[4] The Union contended that they were not "employed during the payroll period" ending November 24, 1979 and, therefore, were not eligible voters within the definition provided by the Stipulation for Certification Upon Consent Election. Airport Shuttle argued that as Reichert, McNew, and Strunk were on its payroll during the period ending November 24, 1979, they were "employed and working" and, therefore, eligible to vote.

On February 6, 1980, the Regional Director issued a Report on Challenged Ballots recommending that the Union's challenges be sustained and that those ballots neither be opened nor counted. He further recommended that the Union be certified as exclusive bargaining representative. On February 18, 1980, petitioner filed Exceptions to the Report urging that the Board reject the Regional Director's recommendation that Reichert, McNew, and Strunk be denied voter eligibility. On May 14, 1980, the Board adopted the Regional Director's findings and recommendations and certified the Union as exclusive bargaining representative.

Seven months elapsed before the Union contacted Airport Shuttle, but when it finally did so on December 11, 1980, petitioner refused to bargain. The Union filed unfair labor practice charges on January 20, 1981, and on March 4, 1981, the Regional Director issued a Complaint alleging that the Company violated sections 8(a)(1) and (5) of the National Labor Relations Act by refusing to bargain. The General Counsel moved for Summary Judgment and on August 25, 1981, the Board issued the decision and order which are the subject of this appeal.

### 1. Voter Eligibility

It is uncontested that Reichert, McNew, and Strunk fall within the appropriate collective-bargaining unit.[5] Further, it is uncontested that they were employees of Airport Shuttle working out of the Greater Cincinnati Airport at the time of the election. The only question is whether they were "employed during the payroll period" ending November 24, 1979, and, therefore, eligible voters. Petitioner first raises an equitable argument asserting that the Union is foreclosed from contesting the eligibility of Reichert, McNew, and Strunk because it failed to contest their eligibility during the two-week period prior to the election after it had received a voter eligi-

---

**3.** Stipulation for Certification Upon Consent Election provided, inter alia:

> 2. ELIGIBLE VOTERS.—*The eligible voters shall be those employees included within the unit described below, who were employed during the payroll period indicated below,* and also employees who did not work during said payroll period because they were ill or on vacation or temporarily laid off, employees in the military services of the United States who appear in person at the polls, employees engaged in an economic strike which commenced less than 12 months before the election date and who retained their status as such during the eligibility period and their replacements, * * *
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> 10. PAYROLL PERIOD FOR ELIGIBILITY. —November 24, 1979
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> 12. THE APPROPRIATE COLLECTIVE–BARGAINING UNIT.—*All full-time and part-time employees of the Employer at and working out of its location at the Greater Cincin-*

*nati Airport, Erlanger, Kentucky,* including drivers, counter persons and maintenance persons, but excluding office clerical employees and all professional employees, guards and supervisors as defined in the Act. (emphasis added)

**4.**
| | |
|---|---|
| Approximate number of eligible voters | 41 |
| Void Ballots | 1 |
| Votes cast for Union | 18 |
| Votes cast against Union | 17 |
| Valid votes counted | 35 |
| *Challenged ballots | 4 |
| Valid votes counted plus challenged ballots | 39 |

*The fourth challenged ballot belonged to Silas George Sharp. As Mr. Sharp had been permanently terminated prior to both the eligibility and the election dates, however, Airport Shuttle took no exception to the Regional Director's recommendation that the Union's challenge as to his ballot be sustained.

**5.** See footnote 3.

bility list containing the names of those three employees. This argument lacks merit. The challenge procedure provides a mechanism by which the validity of *ballots* is challenged. Until a ballot is cast, an objection based on the ineligibility of the voter is premature. Accordingly, the Union cannot be said to have waived its right to contest voter eligibility.

 Petitioner next argues that the Regional Director erred in applying the "employed and working test" in holding that Reichert, McNew, and Strunk were ineligible to vote. *Roy N. Lotspeich Publishing Co.*, 204 N.L.R.B. 517 (1973), and *Ra-Rich Manufacturing Corp.*, 120 N.L.R.B. 1444, 1447 (1958), iterate the well established principle that "employed during the payroll period" means a voter must be *employed and working* on the established eligibility date and the date of the election. The Regional Director relied upon *PRS Limited, d/b/a F & M Importing Company,* 237 N.L.R.B. 628 (1978) to conclude that Reichert, McNew, and Strunk were ineligible to vote because the money they received during the November 24, 1979 payroll period was actually compensation for time spent securing a position with the company, rather than compensation for actual work performed for the company. This reasoning is supported by the fact that Reichert, McNew, and Strunk remained on the payroll of Systems Parking until the December 1, 1979 take-over by Airport Shuttle.

Petitioner misapprehended the reasoning of the Regional Director and argued that an employee does not necessarily have to be working during the eligibility period in order to vote, as evidenced by employees who retain their eligibility although on strike, lay-off, vacation, or fulfilling military obligations, etc. Those situations are inapposite. *See NLRB v. Family Heritage Home-Beaver Dam, Inc.*, 491 F.2d 347, 349–50 (7th

Cir.1974) (where an election resulted in 18 pro, 17 con, and 3 challenged ballots, the Board sustained the findings of the Regional Director that a newly hired employee who reported to work 20 minutes early, and therefore within the eligibility period, was ineligible, though paid for the 20 minutes in question); and *Matlock Truck Body & Trailer Corp. v. NLRB*, 495 F.2d 671 (6th Cir.), *cert. denied*, 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974) (where an employee who was transferred to a department within the voting unit prior to the eligibility period, but who did not physically move to or perform services in that department until after the eligibility period, was found ineligible to vote).

Accordingly, the Board did not abuse its discretion [6] in finding Reichert, McNew, and Strunk ineligible to vote.

### 2. Refusal to Bargain

 Petitioner contends that the Board erred in finding that it had wrongfully refused to bargain with the Union arguing that (1) the Union did not contact petitioner until seven months after certification; (2) the Union was completely inactive during those seven months in that it did not appoint a steward, did not strike or picket, did not file any grievances, made no bargaining demands, and did not render assistance to two employees who had filed unfair labor practice charges against the company; (3) petitioner had reasonable doubt to question the majority status of the Union as it had received a disaffection petition signed by over 70% of the bargaining unit employees; and (4) petitioner questioned the ineligibility of Reichert, McNew, and Strunk.

The third and fourth arguments advanced by petitioner can be summarily dismissed. The disaffection petition is irrelevant because petitioner refused to bargain on December 10th or 11th, 1980 and the

---

6. Congress has entrusted to the Board considerable discretion in conducting elections and resolving disputes concerning representation. The task of this Court is to determine whether the Board acted arbitrarily in the exercise of its discretion. See *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 [67 S.Ct. 324, 327, 91 L.Ed. 322] (1946); *Harlan # 4 Coal Company v. N.L.R.B.*, 490 F.2d 117, 120 (6th Cir.), *cert. denied*, 416 U.S. 986 [94 S.Ct. 2390, 40 L.Ed.2d 763] (1974).
*NLRB v. Pinkerton's Inc.*, 621 F.2d 1322, 1324 (6th Cir.1980).

petition was not presented until December 24, 1980. Also, the finding that Reichert, McNew, and Strunk were ineligible to vote has already been reviewed and affirmed.

It is well settled that a certification by the Board of a Union as bargaining agent for employees must be honored for a reasonable period, ordinarily one year, in the absence of unusual circumstances. This rule applies even though the Union may have lost its majority status prior to the expiration of the one year period. 29 U.S.C. § 159(c)(3); *Brooks v. NLRB,* 348 U.S. 96 [75 S.Ct. 176, 99 L.Ed. 125]; *McLean v. NLRB,* 333 F.2d 84, 88 (C.A.6). *NLRB v. Lynair, Inc.,* 380 F.2d 286, 288 (6th Cir.1967). In *McLean v. NLRB,* 333 F.2d 84 (6th Cir.1964), the Union had failed to pursue negotiations with the employer for eight months following the certification election. This Court held:

> In our judgment, the doctrine of waiver or estoppel did not operate to excuse the employer from its statutory duty to bargain in good faith with the union during the certification period. *NLRB v. Remington Rand, Inc.,* 94 F.2d 862 (C.A.2); *NLRB v. Southeastern Rubber Mfg. Co.,* 213 F.2d 11, 15 (C.A.5).

> The union was given statutory protection to bargain on behalf of the employees for one year after certification. Section 9(a), 9(c)(3) (29 U.S.C.A. 159(a); 159(b); 159(c)(3)).

*Id.* at 88. This Court further held:

> The fact that the employees were dissatisfied with the union and there was a question whether the union still had a majority of them on its side did not justify McLean's refusal to bargain. If the employees were not satisfied with the union, they could have submitted their grievances to the Board. After the twelve month certification period the employees could have filed a petition for election if the dissatisfaction continued. Sections 9(e)(1) and (2), 29 U.S.C. § 159(e)(1) and (2). The employer also could petition the Board for relief. Section 9(b), 29 U.S.C. § 159(b).

*Id.* Accordingly, it was not clear error for the Board to conclude that the petitioner's refusal to bargain violated the NLRA. Moreover, when petitioner refused to bargain with the Union, it did so at the risk that if its challenges failed, a bargaining order based upon a finding of refusal to bargain would be appropriate. *See NLRB v. W.R. Grace & Co., Construction Products Division,* 571 F.2d 279, 282 (5th Cir.1978).

### 3. Evidentiary Hearing

■ Petitioner contends that the Board erred in summarily refusing to conduct an evidentiary hearing. This argument lacks merit. The Board is only required to conduct an evidentiary hearing when it has been presented with evidence raising *substantial and material issues of fact* which, if resolved in favor of the party seeking the hearing, would require a finding in that party's favor. *See Mid America Media, Inc., WTRX–AM v. NLRB,* 663 F.2d 17 (6th Cir.1981); *NLRB v. Tennessee Packers, Inc.,* 379 F.2d 172, 178 (6th Cir.) *cert. denied,* 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). Even accepting all of petitioner's claims as true for purposes of summary judgment, as a matter of law it had no right to refuse to bargain.

### 4. Period of Extension

■ Petitioner's final contention on appeal is that the Board erred in extending the Union's certification for a year after the date on which the Company commenced to bargain in good faith, arguing that the certification "year" should have been shortened by the period of time which expired prior to when the Union sought to negotiate. Petitioner argues by comparison to cases where the Board extended the certification period less than a year, that the Board erred in not so limiting this period of extension.

Petitioner is precluded from asserting this argument for the first time on appeal by section 10(e) of the N.L.R.A., 29 U.S.C. § 160(e). *See N.L.R.B. v. Allied Products Corp., Richard Brothers Div.,* 548 F.2d 644, 653–54 (6th Cir.1977) (where this Court refused to pass on a challenge to a remedy

first imposed by the Board *sua sponte* in its decision, because the company had failed to move for a rehearing or reconsideration [Board's Rules and Regulations, Series 8, as amended (29 C.F.R. § 102.48(d) (1981)] which would have allowed this Court to review the Board's application of its expertise to the controversy).

█ Even if petitioner was not precluded from raising this argument for the first time on appeal, we would decline to overrule the Board's exercise of its broad remedial powers because there has not been a showing of abuse of discretion.

Accordingly, the order of the Board is enforced.