MATLOCK TRUCK BODY AND TRAIL-
ER CORP., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 73-1599.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1974.

Decided April 26, 1974.

———◆———

Thomas Nelms, III, Nashville, Tenn.,
for petitioner; John T. Conners, Jr.,
Boult, Cummings, Conners & Berry,
Nashville, Tenn., on brief.

Charles I. Cohen, N. L. R. B., for re-
spondent; Peter G. Nash, Gen. Counsel,
John S. Irving, Deputy Gen. Counsel,
Patrick Hardin, Associate Gen. Counsel,
Elliott Moore, Deputy Associate Gen.
Counsel, John D. Burgoyne, Attys., N. L.
R. B., Washington, D. C., on brief.

Before CELEBREZZE and MILLER, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

In this petition for review of the Board's decision in a case involving the National Labor Relations Act, the petitioner, Matlock Truck Body and Trailer Corporation, contends that the Board illegally sustained the Union's challenges to the ballots of several workmen taking part in the election.

██ Among the ballots so challenged were those of Bobby Lamb and Sandra Lamb, husband and wife, who did janitorial work on a contract basis. They worked fifty per cent of their time in the plant and the remainder in the office. Their normal work hours were from 6:00 p. m. to 9:30 p. m., Monday through Friday. Occasionally, they worked weekends, but made adjustment therefor by taking time off during the week—arriving early or late. They do not punch a clock as do all production and maintenance employees. No deductions for federal income tax or social security are withheld or paid by the company. They did not fill out application blanks, and do not receive any of the company's benefits.

Based on these facts, the Board considered that the Lambs did not enjoy a community of interest with unit employees and, therefore, challenged their votes. We agree with the holding of the Board.

██ The ballot of Bennie Wilson was challenged by the Board. In order to be eligible to vote, he would have to have been employed in the voting unit on both the payroll eligiblity date—June 10, 1972, and the election date—July 13, 1973. "The test for determining eligibility is the individual's actual status on the eligibility date and election date." Westchester Plastics of Ohio, Inc. v. N. L. R. B., 401 F.2d 903, 907 (C.A. 6).

Wilson had been employed in the Manufacturing Department until he quit his job on March 20, 1972. On May 2, he was reemplcyed in the Service Department—a department not included in the voting unit. Approximately on May 31, 1972, he requested a transfer back to the Manufacturing Department. A payroll change notice shows that he was transferred to Manufacturing with no change in pay, and was not assigned a new dock number until the end of July. The Company explained that although the transfer of Wilson was effective June 6, it was decided that he would not be "physically moved" to Manufacturing until he completed the work he was then performing in the Service Department on a special order job. Copies of Wilson's time-cards indicated that he used the separate Service Department clock and cards through Monday, June 12, when he was told he should report to Manufacturing. Following instructions, on Tuesday, June 13, he began using the Manufacturing time clock. Manufacturing employees use one time-card per week, clocking in and out one time each day. On the other hand, service personnel use a new time-card each day, checking in and out on each job performed and writing each job number on the time-card.

The Board found that the transfer of Wilson was not effective until June 13, a date subsequent to the payroll eligibility date. As stated by Respondent:

"Before the Board, the Company explained that although the transfer of Wilson was effective June 6, it was decided that he would not be 'physically moved' to manufacturing until he completed the work he was then performing in the service department on a special order job. 'Convenience' was the reason cited for continuing to utilize the service department timeclock. No explanation was tendered as to why his name was not placed on the eligibility list.

"Based on these facts the Board concluded that the transfer of Wilson was not effective until June 13, 1972—a date subsequent to the payroll eligibility date. The Board noted that although the Company's payroll

change was dated June 6, 'Wilson's job location and duties did not change until June 13, 1972.' The Board also noted that while Wilson's work between June 6 and June 13 could be considered 'manufacturing' work, he and other employees had performed such work in the past while they were attached to the service department. The Board therefore concluded that despite the apparent payroll change Wilson did not in fact join the manufacturing department until after June 13.

"The Board's conclusion is within its discretion in such matters. The evidence here—Wilson's location, job duties and use of the service department timeclock, as well as the Company's own failure to include Wilson on the eligibility list—amply support the Board's determination. The Company's claim that the Board in its decision has effectively imposed 'geographical restrictions' not mentioned in the original stipulation is unfounded. The Board has merely looked to Wilson's workplace as one piece of evidence bearing on the issue of which department Wilson belonged to."

■ The Company also alleged that the Board agent conducting the election acted improperly with respect to employee Fred Terry when the latter presented himself to vote; and the Company Union engaged in coercive activity. As previously noted, in order to be eligible to vote in the election, an employee must have been employed by the Company on June 10, 1972, and July 13, 1973. The Board agent explained the June 10th vote, stating that Terry's vote would be challenged, and also told him that "most likely you are not eligible to vote and your vote won't count anyway." Evidence revealed that Terry was employed by the Company on June 8, 1973, and that his name was inadvertently left off the eligibility list because his employment papers did not reach the personnel office until after the list had been prepared. This whole episode re-

garding Terry's right to vote is most questionable. A Board agent generally has the obligation to offer a challenged ballot to every person who thinks he is eligible to vote, and whose claim is not frivolous on its face.

■ Terry had told the Board agent that he had been employed only two or three weeks. This afforded the Board agent no grounds for thinking Terry was eligible as a voter; and the Board agent, relying on Terry's assertion that he had been employed only two or three weeks, afforded no grounds for believing that Terry was eligible, and the Board agent's statement that Terry was not eligible was predicated on Terry's assertion.

There may have been some mistake in all of the foregoing with reference to Terry's right to vote. The challenged voting procedure was not explained to Terry by the Board agent, but noting Terry's contradictory testimony and the fact that the Company observer testified that Terry had been employed only two or three weeks, according to Terry's own statement, and that the Board agent had actually explained the challenged ballot procedure to him, the Board did not credit Terry's account. Moreover, if it be assumed that Terry was improperly denied an opportunity to cast a .challenged ballot, the result of the election showed that Terry's ballot would have made no difference in the outcome of the election.

■ We have considered the contention that the Company suffered Union coercion in the election. Isolated threats or coercion by the Union or its adherents are not sufficient to warrant setting an election aside. Unions and employers cannot prevent misdeeds or misstatements by persons over whom they have no control. It is our view that the employees had a fair opportunity to express and did express their free and untrammeled desires in the election in question.

Property destruction of a somewhat minor nature was wrought on the cars

of employees who were active in the cause of Union organization or against the cause. Alleged threats during the campaign are not reasons to set aside the election, as there is no evidence that any of these incidents prevented any of the employees from voting their free choice.

The Court holds that the findings by the Board are supported by substantial evidence on the record considered as a whole. The Board's cross-petition for enforcement is hereby granted.